IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| KELLIS DJON JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case Number 10-cv-00193-slc |
| | ) | |
| WARDEN C. HOLINKA, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO ORDER TO SHOW CAUSE**

Respondent Carol Holinka, Warden ("Respondent"), by her attorneys, Stephen P. Sinnott, United States Attorney for the Western District of Wisconsin, and Megan McDermott, Assistant United States Attorney for said District, submits the following response to Kellis Djon Jackson's petition for a writ of habeas corpus pursuant to the Court's orders entered June 4 and 16, 2010.

## Introduction

Petitioner Kellis Djon Jackson ("Petitioner") claims various errors in a decision of the United States Parole Commission ("the Commission") denying him parole. Petitioner makes two main arguments. First, he contends that the Commission should have held a hearing in November 2007, so that his January 19, 2010 hearing was untimely. Second, he contends that the Commission violated the Ex Post Facto clause by applying guidelines that were issued in 2000 ("2000 Guidelines") rather than regulations published in 1987 ("1987 Regulations"). This Court initially ordered

Respondent to respond on the issue of whether the Commission's decision violated the Ex Post Facto Clause. Dkt. 2. Upon Petitioner's motion for reconsideration, the Court ordered Respondent to address the additional issue of whether Petitioner was denied a timely hearing. Dkt. 6.

Petitioner's claims are without merit. Regarding Petitioner's first claim that the Commission failed to hold a timely hearing, Petitioner did not exhaust that aspect of his claim, and his assertion that the Commission should have held a hearing in November 2007 is incorrect. Regarding Petitioner's second claim that the Commission violated the Ex Post Facto clause by failing to give him the full benefit of the 1987 Regulations, this claims fails because Petitioner committed his underlying offense in 1986 at a time when parole decisions were almost entirely discretionary. Moreover, even if Petitioner could establish an Ex Post Facto claim, the evidence shows that the Commission did apply the 1987 Regulations. Thus, his challenge fails on the merits.

### Facts

Petitioner was sentenced by the United States District Court for the Eastern District of Virginia on May 22, 1987, to a 30-year federal term of imprisonment for kidnapping for the purpose of ransom and transporting the victim in interstate commerce, and a 5-year consecutive term for threats and obstruction of justice. (Exhibit 1, sentence monitoring computation data.) On June 12, 1987, Petitioner was also sentenced by the District of Columbia Superior Court to a 45-year term of imprisonment, to be served consecutively to the federal sentences, for kidnapping. (Exhibit 1, pp. 2-3.) The Federal Bureau of Prisons aggregated these sentences into a

total sentence of 80 years. *Id.* The District of Columbia offense was committed in 1986. (Exhibit 1, p. 3; Exhibit 13, p. 1.)

The Commission conducted an initial parole hearing for Petitioner on June 13, 2000. (Exhibit 2, initial hearing summary.) Under the Commission's regulations for inmates serving "mixed" sentences with both federal and D.C. components, the Commission applies the federal parole guidelines to the federal portion of the sentence, and the rules applicable to D.C. Code offenders to the D.C. sentence. *See* 28 C.F.R. § 2.65(b). The Commission applied the federal parole regulations to the 35-year federal portion of Petitioner's sentence in an initial hearing in 2001 and ordered that Petitioner continue to serve until a 15-year reconsideration hearing in June 2015. (Exhibit 3, notice of action.) The Commission modified this decision on administrative appeal, instead ordering that the case be continued for a hearing in February 2010 to apply the D.C. guidelines with respect to the D.C. sentence. (Exhibit 4, notice of action on appeal.)

The Commission conducted a statutory interim hearing on August 7, 2002, for the federal portion of the sentence. (Exhibit 5, hearing summary.) The Commission ordered no change in its prior order. (Exhibit 6, notice of action.) Petitioner received additional statutory interim hearings in June 2004, June 2006, and June 2008, after which the Commission ordered no change. (Exhibits 7, 9 and 11, hearing summaries, and Exhibits 8, 10 and 12, notices of action.) In the July 2008 notice of action, the Commission's order stated, "Schedule an initial hearing on the D.C. Code portion of the sentence in February 2010 and commence application of the D.C. Board of Parole guidelines at that time." (Exhibit 12.)

3

On January 19, 2010, the Commission conducted an initial hearing to apply the D.C. parole guidelines to the 45-year D.C. Code portion of Petitioner's sentence. (Exhibit 13, hearing summary.)  The Commission applied the 1987 Guidelines. (Exhibit 15, notice of action.)  The Commission calculated Petitioner's salient factor score ("SFS") as 3 points.  (Exhibit 14, D.C. parole worksheet, p. 1.)  Under the D.C. guidelines, a SFS of 3 points indicates that the person is in a "high" risk group, and converts to a base point score of +3.  (Exhibit 14, p. 2.)  Petitioner received an additional point for violence/weapons, and an additional point for negative institutional behavior. (Exhibit 14, p. 2.)  One point was deducted for program achievement.  (Exhibit 14, p. 2.) This yielded a total point score of 4 points.  (Exhibit 14, p. 2.)  Petitioner's point score of 4 placed him in the total point range of 3-5, which indicates that parole should be denied.  (Exhibit 14, p. 2.)  The Commission denied parole, and ordered a rehearing in January 2011 after service of 12 months from the hearing date.  (Exhibit 15, notice of action.)  This decision is not administratively appealable.

In the meantime, after the Commission's hearing in January 2010, but before receiving a decision, Petitioner filed a grievance with Respondent (Warden Holinka) on or about February 3, 2010.  Declaration of Amy Standefer-Malott dated June 28, 2010, ¶ 7 & Ex. C, p. 1.  In that grievance, he alleged that he had not received a timely parole hearing.  *Id.*  After the Warden responded by explaining that his January 2010 hearing was timely, he filed a Regional Appeal on or about March 23, 2010.  *Id.*, ¶ 9 & Ex. C, p. 4. Shortly thereafter, Plaintiff filed suit in district court.  Dkt. 1 (Petition received by the court on April 9, 2010).  Petitioner received a response to his Regional Appeal on or

4

abut May 12, 2010.  Standefer-Malott Decl., ¶ 10 & Ex. 3, p. 5.  The response informed

Petitioner that if he was dissatisfied with the response, he could appeal to the Office of

General Counsel within thirty days.  *Id*.  Petitioner did not file any further grievances.

*Id*., ¶ 10.

## Argument

This § 2241 petition implicates two issues: (1) whether the Commission's

hearing should have been held in November 2007 and (2) whether the Commission

violated the Ex Post Facto Clause in denying parole.  Petitioner's first claim should be

dismissed for failure to exhaust administrative remedies, as Petitioner filed this action

prior to completing the BOP's grievance process.  In the event that the Court addresses

the merits, the Court should deny both aspects of the petition for the reasons set forth

herein.

### A.    Petitioner Failed to Exhaust His Claim That He Did Not Receive a Timely Hearing.

Under the Prison Litigation Reform Act of 1996, a prisoner must exhaust

administrative remedies prior to filing a civil action in federal district court.  42 U.S.C.

§ 1997e(a).  As the Supreme Court has explained:

> [B]ecause exhaustion requirements are designed to deal with parties
> who do not want to exhaust, administrative law creates an incentive
> for these parties to do what they would otherwise prefer not to do,
> namely, give the agency a fair and full opportunity to adjudicate
> their claims.  Administrative law does this by requiring proper
> exhaustion of administrative remedies, which means using all steps
> that the agency holds out, and doing so properly (so that the agency
> addresses the issues on the merits).

5

*Woodford v. Ngo*, 548 U.S. 81 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002)).  To meet the exhaustion requirement, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  An inmate's administrative grievances must be sufficiently detailed so as to alert the institution as to what is being claimed.  *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

The BOP's grievance procedures are set forth at 28 C.F.R. §§ 542.13-15.  An inmate must first present his concerns to staff, so that staff can attempt to resolve the issue informally.  28 C.F.R. § 542.13.  If no informal resolution is reached, the inmate must file a BP-9 with the Warden.  28 C.F.R. § 542.14.  If the inmate does not receive relief, he must appeal to the Regional Director and then the Central Office.  28 C.F.R. § 542.15.  Appeals may not raise new issues, nor may they combine issues raised below. *Id*.  The time frames for filing grievances are set forth in the regulations, and an inmate must typically initiate the grievance process within 20 days of the complained-of occurrence.  28 C.F.R. § 542.14.

The PLRA does not apply to habeas petitions under 28 U.S.C. § 2241, but courts have nonetheless enforced a common law exhaustion requirement in habeas actions.  *See, e.g., Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004); *but see Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (courts may exercise their discretion to waive exhaustion for § 2241 petitions in certain circumstances).

In its order to show cause, this Court noted that the Commission's order stated that it was not appealable.  Dkt. 2, p. 3.  The Court therefore assumed that

Petitioner had exhausted administrative remedies for the purpose of issuing its order to show cause. *Id.* While Respondent agrees that Petitioner had no further remedies with respect to the Commission's decision to deny parole, at least with respect to the timing of the hearing, the BOP's grievance procedures were available to Petitioner but he did not fully avail himself of those procedures.

To the contrary, Petitioner waited until after the January 2010 hearing to file a grievance with the Warden about whether that hearing was timely. Standefer-Malott Decl., ¶ 7 & Ex. C, p. 1. Yet by the time he initiated this grievance process, Petitioner had been advised repeatedly over an eight-and-a-half year period that the Commission planned to schedule its initial hearing on the D.C. Code portion of his sentence for February 2010. *See, e.g.,* Exhibit 4 (notice of action on appeal dated June 2001); Exhibit 6 (notice of action dated August 2002); Ex. 8 (notice of action dated July 2004); Exhibit 10 (notice of action dated July 2006); Exhibit 12 (notice of action dated July 2008).

Petitioner now claims that he should have had his initial hearing for the D.C. portion of his sentence in November 2007. Dkt. 1, p. 24, n.1. If Petitioner had concerns regarding the timeliness of the Commission's hearing, he should have initiated the grievance process within 20 days of receiving the initial notification on June 6, 2001. 28 C.F.R. § 542.14. The fact that he waited until February 2010 to file his grievance with the Warden, coupled with his failure to complete the grievance process by filing a central appeal, shows that he failed to exhaust administrative remedies before filing suit. Accordingly, Respondent respectfully requests that the Court dismiss Petitioner's claim that he did not receive a timely hearing. *See, e.g., Muller v. Zuerchner,* 2008 WL

4936724 (C.D. Ill. Nov. 17, 2008) (in § 2241 action, dismissing inmate's challenge to the

BOP's calculation of sentence for failure to exhaust, while denying petition as to the

Commission's parole decision) (copy attached).

> **B.    Alternatively, Petitioner's Claim That He Received an Untimely Hearing Should Be Denied on the Merits.**

In the event the Court exercises its discretion to review the merits of

Petitioner's claim that he did not receive a timely hearing, this claim should be denied

because the January 19, 2010 hearing was timely.

The applicable regulation, entitled "Paroling Policy for Prisoners Serving

Aggregate U.S. and D.C. Code Sentences," provides:

> (a) *Applicability*.  This regulation applies to all prisoners serving any combination of U.S. and D.C. Code sentences that have been aggregated by the U.S. Bureau of Prisons.  **Such individuals are considered for parole on the basis of a single parole eligibility and mandatory release date on the aggregate sentence**.  Pursuant to [28 C.F.R.] § 2.5, every decision made by the Commission, including the grant, denial, and revocation of parole, is made on the basis of the aggregate sentence.

28 C.F.R. § 2.65(a) (emphasis added).  The aggregated sentence is calculated by using

the guidelines at 28 C.F.R. § 2.20 for any crimes under the United States Code, and the

District of Columbia sentencing guidelines for any crimes under the D.C. Code.

28 C.F.R. § 2.65(b).  The guidelines at 28 C.F.R. § 2.20 determine a prisoner's "federal

time," which begins with the prisoner's initial commitment on the current aggregate

sentence, including jail time.  28 C.F.R. § 2.65(c).  The regulations expressly provide that

for a sentence longer than five years, the maximum federal time is two-thirds of the

sentence.  28 C.F.R. § 2.65(d).  The Commission must hold a hearing four months in advance of the maximum federal time.  28 C.F.R. § 2.65(e).

The record evidence shows that a January 2010 hearing was appropriate under § 2.65. Petitioner's sentence under the U.S. Code is 35 years.  (Exhibit 1.)  Under 28 C.F.R. § 2.65(d), the Commission has the authority to require petitioner to serve to his two-thirds date in satisfaction of the "federal portion" of his sentence.  The BOP calculated the two-thirds date for Petitioner to be June 13, 2010.  (Exhibit 1, p. 4.)  The Commission's hearing on January 19, 2010, occurred more than four months in advance of the two-thirds date.

Petitioner argues that the hearing should have occurred in advance of his scheduled release date of August 7, 2008.  Dkt. 1, p. 24, n.1; *see also* Exhibit 1, p. 4 (identifying the BOP scheduled release date or "SRD").  The "Remarks" section of this document may have led to Petitioner's confusion, as it indicates that Petitioner had a two-thirds date of June 13, 2010, and scheduled release date of August 7, 2008. Exhibit 1, p. 4.  It further states that "The earlier date is used by U.S. Parole Commission in applying Section 2.65 of the U.S. Parole Commission Rules and Procedures." Petitioner appears to be interpreting "earlier date" to mean the August 7, 2008 date. But the specified regulation clearly provides that the Commission uses the two-thirds date for sentences longer than 5 years.  28 C.F.R. § 2.65(d).   Thus, the phrase "earlier date" refers to the order of the dates in the previous sentence, i.e. "the former date."

The last question is whether Petitioner's hearing was timely in light of the two-thirds date of June 13, 2010.  Petitioner suggests that 28 C.F.R. § 2.12(a) applies to

this case.  Dkt. 1, p. 24, n.1.  That regulation requires a hearing nine months prior to the completion of the minimum federal time, or as soon thereafter as practicable.  However, that regulation governs prisoners serving a federal sentence.  As set forth above, inmates serving both federal and D.C. sentences are governed by 28 C.F.R. § 2.65.  This regulation provides that a hearing must be held four months prior to the two-thirds date of the federal portion of the sentence.  28 C.F.R. § 2.65(e).  Thus, the Commission's hearing on January 19, 2010, was timely.

Finally, even if there were a question of timeliness, there is no indication that Petitioner was prejudiced by any delay.  *See Bryant v. Grinner*, 563 F.2d 871, 872 (7th Cir. 1977) (in the context of a delayed revocation hearing, nothing in the record showed that the delay was intended to disadvantage the parolee and parolee failed to allege that his opportunity to present his case was prejudiced by the delay).  For these reasons, relief on this claim should be denied.

### C.    Petitioner Committed His Offenses in 1986 and Therefore Cannot Rely on Any Benefit in the 1987 Regulations.

Petitioner claims that the Commission violated the Ex Post Facto Clause by making a parole determination based on the 2000 Guidelines instead of the 1987 Regulations that were in effect at the time of his sentencing.  His argument relies heavily on a decision of the U.S. District Court for the District of Columbia, *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008).  *Sellmon* held that application of the Commission's amended and supplemented regulations to D.C. Code offenders who had

committed their crimes before the transfer of authority to the Commission could violate the Ex Post Facto Clause of the Constitution depending on the specific facts.[1]

At the outset, it is an open question in the Seventh Circuit as to whether the retroactive application of procedural guidelines for parole raises the same constitutional concerns as the retroactive application of statutes or regulations. In *Glascoe v. Briscoe,* the Seventh Circuit noted a circuit split on the issue that included a D.C. Circuit decision applying the Ex Post Facto Clause to the D.C. parole guidelines at issue in this case. 421 F.3d 543, 548 (7th Cir. 2005) (citing *Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004)). The Seventh Circuit did not indicate that it agreed with the D.C. Circuit decision and instead concluded that it was unnecessary to deepen the circuit split, as the inmate in *Glascoe* had failed to demonstrate that the later guidelines resulted in a significant risk of increased punishment. *Glascoe,* 421 F.3d at 548-49 (citing *Garner v. Jones*, 529 U.S. 244, 255 (2000)); *see also United States v. Demaree*, 459 F.3d 791, 793-94 (7th Cir. 2006) (Ex Post Facto clause only applies to "laws and regulations that bind rather than advise").

---

[1] By way of background, *Sellmon* (as well as Petitioner's complaint) arises in the context of the transfer of paroling authority from the D.C. Board of Parole (abolished August 5, 2000) to the U.S. Parole Commission under the 1997 Revitalization Act. *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998). The Revitalization Act required the Parole Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also gave the Parole Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." *See* D.C. Code § 24-1231(a)(1) and (c) (1999), *recodified as* D.C. Code § 24-131(a)(1) and (c) (2001).

This Court can similarly avoid issuing a decision the constitutional issue in this case, because there is a flaw in Petitioner's argument. Petitioner's crimes occurred in 1986, at a time when parole decisions were almost entirely discretionary. An Ex Post Facto challenge arises "when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981). Petitioner committed the kidnapping offense that is the subject of his D.C. Code sentence on December 10, 1986. (Exhibit 1, p. 3; Exhibit 13, p. 1). Prior to the 1987 regulations, the D.C. Parole Board had broad authority to grant or deny parole. *See* 9 D.C.R.R. § 105 (1972) (providing that parole could be granted "whenever . . . [it appeared that there is a reasonable probability that a prisoner [would] live and remain at liberty without violating the law, that his release [was] not incompatible with the welfare of society, and that he had served the minimum sentence imposed . . . ). After reviewing this statutory scheme, the District Court for the District of Columbia concluded that the D.C. Parole Board had "almost unbridled discretion to grant parole" prior to 1987. *Sellmon*, 551 F. Supp. at 86, n.15. Accordingly, the *Sellmon* court dismissed the Ex Post Facto claims of those plaintiffs who had committed their offenses prior to 1987, holding that they would be unable to show that they were entitled to rely on the 1987 Regulations. *Id*. at 86.

The same analysis should apply here. At the outset, the Seventh Circuit has held that inmates have no constitutional right to parole. *Heidelberg v. Illinois Prisoner Review Board*, 163 F.3d 1025, 1026 (7th Cir. 1998). In Petitioner's case, judicial review is further constrained by the well-established law of the District of Columbia (embodied

in decisions of the highest court of that jurisdiction, the D.C. Court of Appeals) that parole decisions made pursuant to the District's parole statute are not reviewable on the merits.[2]  *See, e.g., Stevens v. Quick*, 678 A.2d 28, 31 (D.C. App. 1996) (court does not review the merits of decision by the Commission, under District's parole regulations); *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. App. 1993) ("On a petition for a writ of habeas corpus, this court does not review the merits of the [D.C. Parole] Board's decision [to revoke parole], but only whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion."); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. App. 1996) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision"); *Jones v. Braxton*, 647 A.2d 1116 (D.C. App. 1994) (merits of decision denying parole not judicially reviewable); *Brown-Bey v. Hyman*, 649 A.2d 8 (D.C. App. 1994) (length of set-off to rehearing is "merits" decision, and is not judicially reviewable).  As

---

[2] Federal courts defer to the expertise of the highest court of a state on questions of interpretation of state law.  *See, e.g., Lindquist Ford, Inc. v. Middleton Motors, Inc.,* 557 F.3d 469 (7th Cir. 2009) (looking to Wisconsin Supreme Court decisions on various common law contract issues).  In this case, it is appropriate to defer to the District of Columbia Court of Appeals for questions of D.C. law.  *See Noble v. U.S. Parole Commission,* 82 F.3d 1102 (DC. Cir. 1996) (federal court certifies "D.C. law" question to D.C. Court of Appeals).  Because the District's highest court has repeatedly held that the D.C. parole statute creates such discretion regarding the parole decision that courts will not review the merits of a decision to grant, deny, or revoke parole, this Court should similarly refrain from reviewing the merits of the Commission's decision in petitioner's case.  *See e.g., Wallace v. Christensen,* 802 F.2d 1539, 1553 (9th Cir. 1986) (*en banc*) (Whether or not the circumstances identified in the Commission's statement of good cause warrant a decision above the guidelines, i.e., whether they may be reasonably considered to be "aggravating factors," is a judgment committed to the Commission's discretion by law, 18 U.S.C. § 4218(d), and because the decision involves a ". . . judgment among a range of possible choices and options relating to the severity of [a prisoner's] offense," it is not subject to judicial review).

the Supreme Court noted in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979):

> The parole-release decision . . . is more subtle [than the revocation decision] and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release.  Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual.

442 U.S. at 10.  In short, under the D.C. parole statute, there is no set of facts which, if shown, mandate that the Board grant a parole release.  *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996).

Prior to the 1987 Regulations, any possibility of parole was almost entirely discretionary.  *Sellmon*, 551 F. Supp. 2d at 86, n.15 (citing 9 D.C.R.R. § 105 (1972)). Therefore, regardless of whether the Commission applied the 1987 Regulations or the 2000 Guidelines, Petitioner cannot show that the Commission exposed him to a substantial risk of increased punishment.  *See Glascoe*, 421 F.3d at 548-49 (citing *Garner*, 529 U.S. at 255).  Accordingly, Petitioner's Ex Post Facto challenge should be denied.

> **D.   Petitioner's Ex Post Facto Claim Should Be Denied Because the Commission Applied 1987 Guidelines.**

In the event that this Court concludes Petitioner has a basis for relying on the 1987 Regulations, his claim fails on the merits because his factual allegations are not supported by the record.  The Commission's Notice of Action states that the Commission applied the 1987 Regulations.  (Exhibit 15.)  In addition, the checklist prepared for Petitioner is the functional equivalent of the checklist Petitioner submitted

as an example of the proper calculation under the 1987 Regulations. *Compare* Exhibit 14 *with* Dkt. 1, Attachment C. Finally, as explained below, the Commission's analysis was consistent with the 1987 Regulations and does not indicate that Petitioner was impacted by changes in the 2000 Guidelines that could have undermined his chance for parole. Because the Commission has already applied the 1987 Regulations that Petitioner seeks, there is no relief that can be granted on this claim.

After the transfer of the D.C. Parole Board's authority, *see* note 1, *supra*, the Commission promulgated between 1998 and 2000 a series of amendments and revisions to the 1987 Regulations of the D.C. Board of Parole. *See* 28 C.F.R. § 2.70 *et seq.* Among the amendments first adopted by the Commission in 1998 was an expanded version of the "Total Point Score" that is contained in the 1987 Regulations of the D.C. Board of Parole. *See* 28 C.F.R. § 2.80 (1999). The guidelines of the D.C. Board of Parole, which were in effect from 1987 to 1998, are described in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996). Briefly summarized, these guidelines required the calculation of a "Total Point Score" based on the prisoner's Salient Factor Score ("SFS") and additional risk points. The prisoner's Total Point Score indicated the risk level presented by each prisoner. If the Total Point Score was 2 or less at the initial hearing, the prisoner would be ordinarily be granted parole. If the Total Point Score was 3 or more at the initial hearing, parole would ordinarily be denied and the prisoner would be continued for a rehearing. At rehearings, a score of 3 would indicate that parole should ordinarily be granted.

Under the 2000 Guidelines at 28 C.F.R. § 2.80 (2001), the SFS was combined with the 1998 expanded list of pre- and post- incarceration factors (including the prisoner's current and past history of violence), to produce a Base Point Score, from which the Commission then calculated a Total Guideline Range. *See* 28 C.F.R. § 2.80 (2001), originally published at 65 Federal Register 70663 (November 27, 2000). The identifying feature of the 2000 Guidelines was that the Commission computed a guideline range for D.C. Code offenders.

These regulations were the subject of extensive litigation. After the *Sellmon* decision, the Commission promulgated a rule calling for application of the 1987 D.C. Board guidelines to any offender who committed his crime between March 4, 1985 (the stated effective date of the 1987 Regulations), and August 4, 1998 (the last day the D.C. Board exercised parole release authority). *See* 74 Fed. Reg. 34,688 (July 17, 2009) (interim rule, effective August 17, 2009) and 74 Fed. Reg. 58,540 (November 13, 2009) (final rule). Because Ex Post Facto jurisprudence requires an inmate to demonstrate that retroactive application of a new rule created a "substantial risk of increased punishment" on the particular facts of his case, not all of the inmates eligible to make a *Sellmon* claim could demonstrate a violation of the Ex Post Facto Clause. *Sellmon*, 551 F. Supp. 2d at 84. But as a policy matter, the Commission preferred to apply regulations consistently, and did not wish to calculate two sets of guidelines for each case it considered. Therefore, it chose to apply the D.C. regulations in all cases of prisoners who committed their crimes during the specified time period.

Here, the evidence shows conclusively that the Commission complied with *Sellmon* by applying the 1987 Regulations. Petitioner's point score under the 1987 guidelines was 4 points, a score that indicated under those guidelines that parole should be denied in the ordinary case. The Commission therefore denied parole, and ordered a reconsideration hearing in twelve months, also in compliance with those rules. *See* Exhibits 13, 14 and 15.

The Commission's decision and analysis may have looked quite different if the Commission had applied the 2000 Guidelines. For example, under the 2000 Guidelines, the Commission is authorized to add up to seven points for various factors associated with an inmate's past crimes, including use of weapons and violence. *See Sellmon*, 551 F. Supp. 2d at 72. In contrast, under the 1987 Regulations, Petitioner could (and did) receive a maximum of one additional point for being in any of the specified risk groups. Exhibit 14, p. 2. In addition, Petitioner received a benefit that he may not have received under the 2000 Guidelines. In calculating his Total Point Score, the Commission negated the added point for institutional misconduct by subtracting a point for sustained program achievement. (Exhibit 13, p. 3, and Exhibit 14, p. 2.) Under the 2000 Guidelines, an inmate can only benefit from this sort of set-off if there is a subjective determination that the inmate has demonstrated "superior program achievement." *See Sellmon*, 551 F. Supp.2d at 88. The Commission's decision contains no such finding for Petitioner. (Exhibit 13, p. 3, and Exhibit 14, p. 2.) Thus, it is apparent that Petitioner benefitted from this point reduction without having to meet the heightened standard set forth in the 2000 guidelines.

17

###### E.    Petitioner's Contentions of Error Are Without Merit.

In an effort to contradict the clear evidence that the Commission applied the 1987 Regulations, Petitioner points to three alleged errors in the Commission's decision. First, he contends that the Commission erred in computing the SFS by including a suspended sentence rather than a disposition. Dkt. 1, pp. 17-18. Second, he contends that the Commission erred in reviewing his complete history of institutional misconduct. Dkt. 1, pp. 18-19. Third, he contends that the decision to deny him parole was motivated by the severity of his crimes, allegedly in violation of the 1987 Regulations. Dkt. 1, pp. 19-22. Each of these arguments is without merit.[3]

###### 1.    The Commission Properly Calculated Petitioner's SFS Based on Three Prior Commitments of More Than 30 Days.

Petitioner alleges that the Commission improperly computed his SFS by counting as a commitment a disposition which was actually a suspended sentence. Dkt. 1, p. 17. He alleges that a proper calculation would change his SFS from 3 to 4 points, which would also change his Total Point Score favorably. This claim is without merit.

Specifically, the Commission found that Petitioner had three prior commitments of more than 30 days. *See* Exhibit 14, p. 1. Two of these commitments are documented in the excerpt from the presentence report that Petitioner submitted for

---

[3] Petitioner appears to be mixing arguments on the merits of the Commission's decision with arguments regarding the governing law for Ex Post Facto purposes. Notably, Petitioner's Total Point Score was calculated at 4, but a score of 3 would also justify denial of parole under the 1987 Regulations. (Exhibit 14, p. 2 (Guidelines for Parole/Denial of Parole)). Thus, any single error in the Commission's point score would not have changed the result.

this Court's consideration.  Dkt. 1, Attachment B (labeled as "Presentence Report showing prior commitments").  First, Petitioner has a 1980 conviction for breaking and entering which resulted in a one year sentence, of which he served 10 months.  Second, he was sentenced on April 23, 1982, for unauthorized use of a motor vehicle, and received credit for time served, and four years probation.  The presentence report showed that he was arrested on November 26, 1981, for this offense, so the Commission can reasonably infer that the commitment was more than 30 days, because the period between the arrest and the disposition of the charge (November 26, 1981, to April 23, 1982) was longer than 30 days and there is no indication that he was released during that time.

Respondent is submitting an additional page from the presentence report that shows the third commitment.  (Exhibit 16, p. 7 of presentence report.)  As this additional page demonstrates, Petitioner has a third commitment of greater than 30 days: on December 15, 1982, he was sentenced to 12 years for aggravated kidnapping, and 4 years for violation of probation.  In short, there is no factual basis for Petitioner's allegation that he has only two prior commitments of more than 30 days.  Accordingly, his SFS calculation of three points was correct.

### 2. The Commission Did Not Violate the Ex Post Facto Clause By Considering All of Petitioner's Institutional Misconduct.

Likewise, Petitioner's argument that the Commission erred by considering all of his institutional misconduct lacks merit.  Dkt. 1, p. 18.  The 1987 Regulations do not limit consideration of an inmate's institutional misconduct.  *See Sellmon*, 551 F. Supp. 2d

at 69 (explaining that one of the stated goals of the 1987 Regulations was to "penaliz[e] institutional misconduct"); *see also* 28 D.C.M.R. § 204.18(h) (The Board is to consider "whether the parole candidate has committed serious disciplinary infractions . . . while under confinement for the current offense").  As the initial hearing summary stated, Petitioner had a total of 17 misconducts adjudicated by the Disciplinary Hearing Officer ("DHO") since April 1991, with the most recent having occurred on July 20, 2006. (Exhibit 13, p. 3.)  The hearing examiner further noted that seven of the incident reports were for the more serious 200-level misconducts including fighting, assault, engaging in a demonstration, and making sexual proposals or threats.  *Id.*

As part of his challenge to the Commission's consideration of this misconduct, Petitioner relies upon a quotation from *Sellmon*, in which the court states the impact of the 1991 Policy Guideline.[4]  Dkt. 1, pp. 18-19.  But Petitioner committed his offenses in 1986, while the 1991 Policy Guideline only applies to inmates who committed their offenses after its effective date.  *See* 74 Fed. Reg. 58,541-42 (Commission will apply 1991 Policy Guideline to those prisoners who committed their crimes during the period that it was in effect from December 16, 1991 to October 23, 1995).  Accordingly, Petitioner cannot rely on the 1991 Policy Guideline to establish an Ex Post Facto violation.  *See Weaver*, 450 U.S. at 28-29 (Ex Post Facto claims implicate the punishment that was in

---

[4] In 1991, the D.C. Board published "a policy guideline" (not a codified regulation) which contained further guidance on the definitions of terms found in the 1987 Guidelines. The 1991 Policy Guideline was in effect from the date of its issue (December 16, 1991) until the Board issued a new policy guideline that superseded it, on October 23, 1995.

place at the time of the offense); *Sellmon*, 551 F. Supp. 2d at 86 (dismissing Ex Post Facto claims of pre-1987 offenders).

> **3.    Petitioner Has Not Shown That He Was Wrongly Prejudiced by the Severity of His Crime.**

Finally, Petitioner contends that he must have been prejudiced by the severity of his crimes of kidnapping and assaulting elderly women.  Dkt. 1, p. 21.  The fact that the examiner accurately summarized Petitioner's criminal history creates nothing more than speculation that Petitioner was exposed to a significant risk of increased punishment.  *Cf. Glascoe*, 421 F.3d at 549.  This is not sufficient to give rise to an Ex Post Facto claim, particularly in light of the discretionary nature of parole decisions at the time of Petitioner's offenses, as well as Respondent's evidence that the denial of parole was in accordance with the 1987 Regulations.

## Conclusion

Petitioner failed to exhaust his claim that he was denied a timely hearing, and he has failed to present sufficient evidence to challenge the timing or result of the Commission's decision denying him parole.  Accordingly, Respondent respectfully requests that this Court deny his petition in its entirety.

Dated this 12th day of July, 2010.

Respectfully submitted,

STEPHEN P. SINNOTT
United States Attorney

By:


*/s/ Megan McDermott*
MEGAN McDERMOTT
Assistant United States Attorney
P.O. Box 1585
Madison, Wisconsin  53701-1585
(608) 264-5158
TTY (608) 264-5006

22