Mr. Kellis Djon Jackson
IBN #13872-083
P.O. Box #1000
Oxford, WI, 53952



IN THE UNTED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Kellis Djon Jackson,
       Petitioner,        Case No. #10-cv-00193-slc

v.                    OPPOSITION TO RESPONDENT'S
                    MOTION FOR SUPPLEMENTAL DECLARATION

Warden C. Holinka,
       Respondent.   /


OPPOSITION TO RESPONDENT'S
MOTION FOR SUPPLEMENTAL DECLARATION


Clerk of the U.S. District Court      U.S. Attorney Megan McDermott
Western District of Wisconsin        U.S. Attorney's Office
P.O. Box #432                        669 W. Washington Ave., #303
Madison, WI, 53701                Madison, WI, 53701-1585

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Kellis Djon Jackson
        Petitioner,       Civ. Action #10-cv-00193-slc

v.

                              OPPOSITION TO RESPONDENT'S
Warden C. Holinka,       MOTION FOR SUPPLEMENTAL DECLARATION
        Respondent.    /

OPPOSITION TO RESPONDENT'S
MOTION FOR SUPPLEMENTAL DECLARATION

    COMES NOW, Kellis Djon Jackson, Petitioner and Pro Se litigant in the above styled cause, and presents to this Honorable Court his OPPOSITION TO RESPONDENT'S MOTION FOR SUPPLEMENTAL DECLARATION. In support, the Petitioner states as follows:

    On April 9, 2010, the Petitioner filed with this Court his petition for a writ of Habeas Corpus, predicated on two issues: (1) that his January 19, 2010 parole hearing was impermissibly delayed due to the Respondent's failure to credit some two (2) years and fifty-five (55) days of Extra Good-Time ("EGT") to his Statutory Release Date ("SRD"); and (2) that improper parole guidelines were utilized at said hearing, in violation of the U.S. Constitution's Ex Post Facto Clause.

    On July 12, 2010, the Respondent filed a RESPONSE wherein

(1)

included an argument that the Petitioner's petition should not be considered by this Court due to the fact that the Petitioner had failed to exhaust his administrative remedies. In support of this argument, the Respondent and her attorneys presented the sworn DECLARATION OF AMY STANDEFER-MALOTT, Senior Attorney for the B.O.P.  The DECLARATION OF AMY STANDEFER-MALOTT stated unequivocally that she had conducted a thorough search of the B.O.P. SENTRY computer program for the Petitioner's filed administrative remedies, and found no record of any filing from the Petitioner to the B.O.P.'s Central Office/General Counsel. As such, the declarant concluded that: "Petitioner did not file any more adminstrative remedies with regard to this issue. Therefore, he has not exhausted his administrative remedies regarding this issue." (see DECLARATION @ page 3).

Upon being confronted with the evidence that the Petitioner did in fact file a administrative remedy to the B.O.P. Central Office/General Counsel, the Respondent and her attorneys have submitted a MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION. In support of said MOTION the Respondent and her attorneys cite an unsupported excuse that:

> "... due to unusually heavy volume, the Sentry database was not updated to reflect this grievance until June 29. Declaration of Amy Standerfer-Malott date July 29, 2010, ¶4. In other words, the database was updated to reflect this information the day after Ms. Standerfer-Malott prepared and signed her declaration."

(2)

The Repsondent's explanation that "the database was updated to reflect this information the day after Ms. Standerfer-Malott prepared and signed her declaration," does not account for the fact that the Petitioner received his copy of the SENTRY entry well before the June 29, 2010 date claimed as the date that the SENTRY database was "updated to reflect this grievance." Or, why, if the information was indeed "updated" on June 29, 2010, this information could not have been ascertained at any time before the July 12, 2010 date in which the sworn <u>DECLARATION</u> was signed and submitted to this Court!?

The Respondent's <u>MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION</u> also states that:

> "Undersigned counsel did not ask Ms. Standefer-Malott to check for any updates regarding the BP-11 prior to filing the declaration on July 12 because this information would not be material. The evidence already established conclusively that Petitioner had not exhausted adminstrative remedies prior to filing suit." (see <u>MOTION FOR LEAVE</u> @ page 3, #7)

As the following facts will irrefutably prove, culpability exists by Respondent and her attorney's failure to thoroughly check the SENTRY records, and has compounded and magnified a charge of PERJURY.

    a. <u>Respondent and her attorney's sworn DECLARATION</u>
       <u>contains inaccurate claims constituting PERJURY.</u>

(3)

As stated, the Petitioner has raised the very serious claim that he is presently UNLAWFULLY INCARCERATED years past what should have been his statutory release, due to the failure of the Respondent to properly account and adjust the SRD of his federal sentence to reflect two years and 55 days of EGT. The Petitioner has presented to this Court the sentence computation methodology as outlined in the B.O.P.'s SETENCE COMPUTATION MANUAL PS 5880.30, and his tabulated computation as irrefutable proof of this egregious error. In response to this mounumental INJUSTICE the Respondent and her attorneys present the implied claim that the Petitioner is somehow barred from raising this argument; or that he has forfeited his earned EGT and the Respondent has no responsibility to properly compute his prison term, just because it appears that the claim was not raised in a timely enough manner. From the Respondent's MOTION FOR LEAVE TO FILE SUPPLEMENT DECLARATION:

> "Respondent further argued that Petitioner had failed to timely pursue administrative grievances because he had been aware for several years that he would not receive a hearing on the D.C. Code portion of his sentence until early 2010, yet he waited until after he received this allegedly untimely hearing before filing BOP grievances relating to this issue." (see @ page 2,3 #4)

See also Respondent's RESPONSE TO SHOW CAUSE @ pages 7,8;

> "... Petitioner waited until after the January 2010 hearing

(4)

to file a grievance with the Warden about whether that hearing was timely. Standefer-Malott Dec.,¶7 & Ex. C, p.1. Yet by the time he initiated this grievance process, Petitioner had been advised repeatedly over an eight-and-a-half year periord that the Commission planned to schedule its initial hearing on the D.C. Code portion of his sentence for February 2010. See, e.g., Ehibit 4 (notice of action on appeal dated June 2001); Exhibit 6 (notice of action dated August 2002); Ex. 8 (notice of action dated July 2004); Exhibit 10 (notice of action dated July 2006); Exhibit 12 (notice of action dated July 2008).

Petitioner now claims that he should have had his initial hearing for the D.C. portion of his sentence in November 2007. Dkt. 1,p.24, n.1. If Petitioner had concerns regarding the timeliness of the Commission's hearing, he should have initiated the grievance process within 20 days of receiving the initial notification on June 6, 2001. 28 C.F.R. §542.14. The fact that he waited until February 2010 to file his grievance with the Warden, coupled with his failure to complete the grievance process by filing a central appeal, shows that he failed to exhaust administrative remedies before filing suit. Accordingly, Respondent respectfully requests that the Court dismiss Petitioner's claim that he did not receive a timely hearing. See, e.g., Muller v. Zuerchner 2008 WL 4936724 (C.D. Ill. Nov. 17, 2008)(in §2241 action, dismissing inmate's challenge to the BOP's calculation of sentence for failure to exhaust, while denying petition as to the Commission's parole decision)(copy attached)."

The Petitioner has made prior mention of the Respondent and her attorney's failure to investigate the claims and facts surrounding

(5)

the instant matter. First and foremost, the Petitioner only wants what he is entitled to, i.e., the proper accounting and adjustment of his SRD to reflect 785 days of earned EGT. The Petitioner finds no advantage of being adversarial merely for the sake of contention. He would much rather enlist and appeal to the Respondent's aid and interest in justice to rectify this gross injustice.

The facts of the matter are that the Petitioner has exhausted his administrative remedies regarding the proper computation of his D.C. Code sentence, and February 2010 parole hearing. What the Respondent has presented to this Court in regard to any lack of exhaustion, is the Petitioner's <u>third</u> (3) grievance process. The Petitioner routinely exhausts everytime he is transferred to a new facility so that the new Warden/Custodian can go on record. The Respondent and her attorneys checked B.O.P. SENTRY only as far as the February 3, 2010 grievance filing. If they had bothered to investigate the complete history of the Petitioner's grievance filings, they would have discovered that in January 2001, the Petitioner exhausted his administrative remedies regarding his sentence construction and 2010 parole date under SENTRY grievance number #230927 - "<u>SENTENCE IS ILLEGALLY CONSTRUCTED</u>" and "<u>CLAIMS SENTENCE IS COMPUTED WRONG.</u>" If the Respondent and her attorneys had done their due diligence, they would have discovered that Petitioner raised the same issue in August, 2007 under SENTRY grievance number 463408 - "<u>SENTENCE UNLAWFULLY EXTENDED W/O DUE PROCESS OF LAW.</u>" (see SENTRY grievance entries at

Attachment A). The Petitioner has tried diligently to acquire a written transcription of his <u>July, 2008</u> parole hearing. For in that hearing a taped-recorded account will demonstrate that the Petitioner did emphatically raise the issue of his untimely parole hearing to the hearing examiner. Surely this Court can obtain that recording as proof that the Petitioner didn't just, as the Respondent claims, bring the question of a timely parole hearing up for the first time after his January, 2010 parole hearing in February, 2010. If the Respondent would have taken the time to fully investigate the instant matter, she and her attorneys would have known this, and would not be wasting the Court's time and resources entertaing baseless claims.

The Petitioner has asked that this Court take judicial NOTICE that an act of PERJURY has been committed by the Respondent's attorneys. Said parties have responded by further PERJURING themselves by stating once again, that the Petitioner has not exhausted his administrative remedies. The documents at Attachment <u>A</u> will serve as ample evidence that the Petitioner has indeed exhausted his administrative remedies regarding the issue of his sentence's proper execution and parole hearing date for his D.C. Code sentence - multiple times. And there is no requirement that the same or related issues be repeatedly exhausted, or a time requirement for initiating a Title 28 §2241 Habeas Corpus petition.

<u>CONCLUSION</u>

Before this Court is the Respondent's <u>MOTION FOR SUPPLEMENTAL</u>

DECLARATION. The Petitioner strongly urges this Court to deny said MOTION based on the facts that the Respondent by her own time-line and admission, could have ascertained the SENTRY entry that documented the Petitioner's General Counsel/Central Office filing well before Respondent filed a sworn DECLARATION to this Court denying the existence of said filing. Consider again:

> "In his Traverse, Petitioner presents evidence that the Central Office received his BP-11 grievance on June 7, 2010. Dkt. 12, Attachment A, p.3. Upon further review, Standefer-Malott has determined that Petitioner did submit a BP-11 grievance to the Central Office in early June, but that due to unusually heavy volume, the Sentry database was not updated to reflect this grievance until June 29. Declaration of Amy Stndefer-Malott dated July 29, 2010, ¶4. In other words, the database was updated to reflect this information the day after Ms. Standefer-Malott prepared and signed her declaration.

Continuing;

> "Undersigned counsel did not ask Ms. Standefer-Malott to check for any updates regarding the BP-11 prior to filing the declaration on July 12 because this information would not be material." (revisit MOTION TO SUPPLEMENT @ p. 3, n. 6 & 7)

The preceding was the Respondent's very own admission and time-line that from the June, 29 SENTRY database update, until the actual court filing of said DECLARATION on July 12, 2010,

(8)

the Respondent's attorney's could have obtained proof of Petitioner's Central Office filing, but made a conscious decision not to because "this information would not be material." Based on this admission, it is simply perplexing that the Respondent and her attorneys would even request permission to <u>SUPPLEMENT</u>!? And based upon this admission, this Court should deny said <u>MOTION TO SUPPLEMENT</u>, and make a determination as to whether sworn statements made under the original <u>DECLARATION</u> and coupled with the evidence presented herein, constitute a charge of PERJURY.

Regarding the Respondent and her attorney's conduct throughout this process, the question of what this party KNEW or SHOULD HAVE KNOWN comes to the fore. In answering this inquiry, all semblance of plausible deniability is out the window! The Respondent and her attorneys KNEW or SHOULD HAVE KNOWN that the Petitioner's SRD had not been adjusted to reflect some 285 days of earned EGT, and that the Petitioner should have been released years ago! Yet the Respondent and her attorneys have used this forum, at the expense of this Court's valuable and limited resources, to make baseless arguments and claims that somehow, the Petitioner should be foreclosed from raising this issue, or that the Respondent could ever be absolved of her responsibilty and obligation to correctly compute the Petitioner's sentence pursuant to established laws and statutes. The Respondent and her attorneys KNEW or SHOULD HAVE KNOWN that the Petitioner had fully exhausted his administrative remedies regarding his sentence construction and parole eligibility multiple times, and that he has raised the question of the

timeliness of his D.C. Code parole hearing at his July, 2008 hearing. Yet, the Respondent and her attorneys have chosen to make a MOCKERY of this Court and this process by raising the baseless claim that the Petitioner has set idle for almost a decade, and has only raised his argument after his January, 2010 parole hearing.

Notwithstanding the question of whether or not the Petitioner exhaused his administrative remedies with the B.O.P., it should be clear that he had no obligation to do so in the first place. The Petitioner's request before this Court is for an IMMEDIATE RELEASE predicated on a RETROACTIVE PAROLE. This remedy is not within the B.O.P.'s authority to grant. And the Respondent and her attorneys are perfectly aware of this fact. As proof, this Court need only revisit the original DECLARATION OF AMY STANDEFER-MALOTT @ p.3, n. 8:

> "... The Warden stated the response was for informational purposes only because parole consideration is at the discretion of the U.S. Parole Commission." Id.

The Petitioner is of the strong belief that the Respondent's exhaustion argument is nothing more than a red herring designed to divert this Court's attention away from the true issue. The Petitioner's obligation to exhaust was to the U.S. Parole Commission, not the B.O.P. (see 28 C.F.R. §2.26 APPEAL TO THE NATIONAL APPEALS BOARD).

Obviously, it is in this Court's wisdom and discretion, to assign any and all weight to the Petitioner's allegations of the

Respondent and her attorney's misconduct. The Petitioner would hope however, that in assessing any culpability, the Court would give added consideration to the enormity of the meaning and responsibility of the U.S. Attorney's sworn OATH to protect the U.S. Constitution and uphold the laws of this land. Because the Petitioner's sentence computation as relates to the tabulation of his earned EGT, is indeed governed by federal law found at U.S.C. Title 18 §4161 et seq.; Federal Regulation found in 28 C.F.R.; numerous federal circuit case precedent; and the B.O.P.'s very own policy found at Program Statement 5880.30 SENTENCE COMPUTATION MANUAL. The repeated failure to adhere and comply to these laws and authorities is nothing short of committing a crime. By not adjusting the Petitioner's sentence to account for his additional earned EGT, the Repsondent and by obvious complicity with her attorneys, is BREAKING THE LAW! The Respondent simply has no discretions not to observe, adhere and comply to the federal statute outlined in U.S.C. Title 18 §4161 et seq. Yet, not only does the Respondent adamantly refuse to obey the clearly established law, she, through counsel and advice from her attorneys, presents groundless argument to this Court in an effort to sway the Court to also turn a blind-eye to this lawlessness!

In addition, the Petitioner would hope that this Court consider the other criminal aspects of the Respondent and her attorney's conduct. As this Court is well aware, it is a criminal offense to KNOWINGLY and INTENTIONALLY enter into a CONSPIRACTY with others to DEPRIVE one of their Constitutional and Civil rights; or to attempt to OBSTRUCT JUSTICE by committing PERJURY by hiding material

(11)

facts and information. The Petitioner is well aware that he is making very serious charges against the Respondent and her attorneys. But in evaluating what the Respondent and her attorneys KNEW or SHOULD HAVE KNOWN, the evidence as outlined, speaks for itself. Again, that determination is left to the sound wisdom and discretion of this Court.

The Petitioner once again outlines his request for relief: (1) that his prison term be properly adjusted to account for some 785 days of earned EGT pursuant to federal law found at U.S.C. Title 18 §4161 et seq.; and (2) based on this new adjusted Statutory Release Date (SRD), that he be granted an IMMEDIATE RELEASE and RETROACTIVE PAROLE.

_____
Mr. Kellis Djon Jackson